**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Palm Beach Division**

Case No._____

JOEY WINSHMAN,
ELI DESATNIK, and
NADAV SLUTZKY,

      Plaintiffs,

vs.

BRIGHT MOUNTAIN MEDIA, INC.

      Defendant,

_____/

## COMPLAINT

Plaintiffs, JOEY WINSHMAN ("**Winshman**"), ELI DESATNIK ("**Desatnik**"), and

NADAV SLUTZKY ("**Slutzky**")[1], by and through their undersigned counsel hereby sue

Defendant, BRIGHT MOUNTAIN MEDIA, INC. ("**Defendant**" or "**BMM**"), and state:

### NATURE OF THE CASE AND SUBJECT MATTER JURISDICTION

1.      This is an action by Plaintiffs against Defendant for breach of three Promissory

Notes resulting in damages to Plaintiffs in excess of $750,000.00, exclusive of interest, costs and

attorney's fees, or in the alternative Defendant's unjust enrichment to the detriment of Plaintiffs.

### THE PARTIES, PERSONAL JURISDICTION, AND VENUE

2.      Plaintiff, Winshman, is an individual, a citizen of Israel, and is otherwise *sui juris.*

3.      Plaintiff, Desatnik, is an individual, a citizen of Israel, and is otherwise *sui juris.*

---

[1] Winshman, Desatnik and Slutzky shall collectively be referred to as the **Plaintiffs.**

Kluger, Kaplan, Silverman, Katzen & Levine, P.L., 201 So. Biscayne Blvd., 27th Floor, Miami, FL 33131  305.379.9000

4.      Plaintiff, Slutzky, is an individual, a citizen of Israel, and is otherwise *sui juris.*

5.      Defendant, BMM, is a Florida corporation, with its principal place of business in Palm Beach County, Florida and is domiciled in Florida.

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) or (2), as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states or citizens of a state and citizens or subjects of a foreign state.

7.      Venue is property in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1391(b)(2) because the Defendant, BMM, resides in this judicial district, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and/or the subject Promissory Notes (as defined herein) require actions relating thereto to be brought exclusively in the United States District Court of the Southern District of Florida, West Palm Beach, Florida.

## GENERAL ALLEGATIONS

### A. The Merger Agreement

8.      BMM is an end to end digital media and advertising services platform that connects brands with consumers.

9.      On July 31, 2019, BMM and its to be organized wholly owned subsidiary Bright Mountain Israel Acquisition Ltd., an Israeli corporation (the "**Merger Sub**"), entered into a Share and Exchange Agreement and Plan of Merger (the "**Merger Agreement**") with Slutzky & Winshman Ltd. ("**S&W**"), an Israeli company headquartered in Tel Aviv, and the shareholders of S&W.

10.      Winshman, Slutzky and Desatnik were the sole shareholders of S&W.

2

11.     At the time of the Merger Agreement, S&W was a data driven marketing company which utilizes programmatic solutions for over the top video and mobile advertising.

12.     On and effective August 15, 2019 (the "**Closing Date**"), the closing of the Merger Agreement occurred.

13.     On the Closing Date, pursuant to the terms of the Merger Agreement, BMM acquired all of the outstanding shares of S&W from the Plaintiffs (the "**Consideration Shares**").

14.     The acquisition of the Consideration Shares by BMM was made in consideration of (i) the issuance of an aggregate of 13,000,000 shares of BMM's common stock, and (ii) promissory notes in the aggregate principal amount of $750,000.

**B.  The Promissory Notes**

15.     More specifically, three promissory notes were entered into by BMM and each of the Plaintiffs, and delivered to each of Winshman, Slutzky, and Desatnik:

(i)     A Promissory Note dated August 15, 2019 in favor of Winshman (the "**Winshman Note**"), in the amount of $279,937.50 (the "**Winshman Principal Balance**"). A true and correct copy of the Winshman Note is attached hereto as **Exhibit "A."**

(ii)    A Promissory Note dated August 15, 2019 in favor of Slutzky (the "**Slutzky Note**"), in the amount of $293,437.50 (the "**Slutzky Principal Balance**"). A true and correct copy of the Slutzky Note is attached hereto as **Exhibit "B."**

(iii)   A Promissory Note dated August 15, 2019 in favor of Desatnik (the "**Desatnik Note**"), in the amount of $185,625.00 (the "**Desatnik Principal Balance**"). A true and correct copy of the Desatnik Note[2] is attached hereto as **Exhibit "C."**

**C.  The Winshman Note**

---

[2] The Winshman Note, the Slutzky Note, and the Desatnik Note shall collectively be referred to as the "**Promissory Notes**."

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., 27TH FLOOR, MIAMI, FL 33131  305.379.9000

16.     Pursuant to the Winshman Note, the Winshman Principal Balance was to be paid by BMM to Winshman as follows:

(i)     $135,469.00 shall be paid on or before August 15, 2020; and

(ii)    The remaining $135,468.50 shall be paid on or before August 15, 2021.

*See,* Ex. "A" at Sec 2.

17.     Section 5 of the Winshman Note entitled "Default" provides:

The occurrence of any of the following shall constitute an event of default ("Event of Default"):

(a) **Failure to Pay**. [BMM] fails to pay, when due, any of the obligations provided for in this [Winshman] Note at their due date or under any other note or obligations of [BMM] to [Winshman].

*Id.* at Sec 5(a).

18.     Pursuant to Section 6 of the Winshman Note entitled "Remedies", it was agreed that:

(a) **Acceleration**. Upon the occurrence of an Event of Default and for so long as such default is continuing:

i.   The total amount of (a) this [Winshman] Note and all other sums owing to Payee which are (i) then due and unpaid or (ii) thereafter to become due and payable; and (b) interest on the foregoing sums, at the rate of one and one-half percent (1 ½ %) per month, but no greater than the highest rate permitted by law, from said occurrence until paid in full (collectively, the "Default Amount") shall, when such Default Amounts is declared due and payable by [Winshman], become immediately due and payable without presentment, protest, demand, or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Agreement to the contrary notwithstanding; and

ii.  [Winshman] may exercise any of the other remedies provide under applicable laws.

*Id.* at Sec. 6.

19.     On July 20, 2020, Winshman's counsel emailed BMM a reminder that the first installment payment under the Winshman Note was due on August 15, 2020.

20.     BMM failed to pay the initial payment of $135,469.00 under the Winshman Note on August 15, 2020 and failed to pay the remaining $135,468.50 on or before August 15, 2021.

21.     On August 23, 2021, Winshman's counsel emailed BMM informing BMM that the Winshman Note was in default as a result of BMM's non-payment pursuant to the terms of the Winshman Note and demanded immediate payment of the monies owed to Winshman.

22.     On December 3, 2021, Winshman served BMM with notice that it was in default under the Winshman Note and, despite no obligation to do so under the Winshman Note, Winshman made a demand on BMM to pay the full Winshman Principal Balance with all past due interest no later than December 10, 2021 (the "**Winshman Demand Letter**"). A true and correct copy of the Winshman Demand Letter is attached hereto as **Composite Exhibit "D."**

23.     BMM ignored the Winshman Demand Letter, failed to respond to the Winshman Demand Letter, and failed to make payment of the Winshman Principal Balance.

24.     There was never a modification or amendment of the Winshman Note.

25.     All amounts due and owing under the Winshman Note remain outstanding as of the date of the filing of this Complaint.

**D.  The Slutzky Note**

26.     Pursuant to the Slutzky Note, the Slutzky Principal Balance was to be paid by BMM to Slutzky as follows:

(i) $146,719.00 shall be paid on or before August 15, 2020; and

(ii) The remaining $146,718.50 shall be paid on or before August 15, 2021.

*See,* Ex. "B" at Sec 2.

27.    Section 5 of the Slutzky Note entitled "Default" provides:

The occurrence of any of the following shall constitute an event of default ("Event of Default"):

(a) **Failure to Pay**. [BMM] fails to pay, when due, any of the obligations provided for in this [Slutzky] Note at their due date or under any other note or obligations of [BMM] to [Slutzky].

*Id.* at Sec 5(a).

28.    Pursuant to Section 6 of the Slutzky Note entitled "Remedies", it was agreed that:

(a) **Acceleration**. Upon the occurrence of an Event of Default and for so long as such default is continuing:

i.    The total amount of (a) this [Slutzky] Note and all other sums owing to Payee which are (i) then due and unpaid or (ii) thereafter to become due and payable; and (b) interest on the foregoing sums, at the rate of one and one-half percent (1 ½ %) per month, but no greater than the highest rate permitted by law, from said occurrence until paid in full (collectively, the "Default Amount") shall, when such Default Amounts is declared due and payable by [Slutzky], become immediately due and payable without presentment, protest, demand, or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Agreement to the contrary notwithstanding; and

ii.    [Slutzky] may exercise any of the other remedies provide under applicable laws.

*Id.* at Sec. 6.

29.    On July 20, 2020, Slutzky's counsel emailed BMM a reminder that the first installment payment under the Slutzky Note was due on August 15, 2020.

30.    BMM failed to pay the initial payment of $146,719.00 under the Slutzky Note on August 15, 2020 and failed to pay the remaining $146,718.50 on or before August 15, 2021.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., 27TH FLOOR, MIAMI, FL 33131  305.379.9000

31.     On August 23, 2021, Slutzky's counsel emailed BMM informing BMM that the Slutzky Note was in default as a result of BMM's non-payment pursuant to the terms of the Slutzky Note and demanded immediate payment of the monies owed to Slutzky.

32.     On December 3, 2021, Slutzky served BMM with notice that it was in default under the Slutzky Note and, despite no obligation to do so under the Slutzky Note, Slutzky made a demand on BMM to pay the full Slutzky Principal Balance with all past due interest no later than December 10, 2021 (the "**Slutzky Demand Letter**"). A true and correct copy of the Slutzky Demand Letter is attached hereto as **Composite Exhibit "D."**

33.     BMM ignored the Slutzky Demand Letter, failed to respond to the Slutzky Demand Letter and failed to make payment of the Slutzky Principal Balance.

34.     There was never a modification or amendment of the Slutzky Note.

35.     All amounts due and owing under the Slutzky Note remain outstanding as of the date of the filing of this Complaint.

**E.  The Desatnik Note**

36.     Pursuant to the Desatnik Note, the Desatnik Principal Balance was to be paid by BMM to Desatnik as follows:

(i) $92,813.00 shall be paid on or before August 15, 2020; and

(ii) The remaining $92,812.00 shall be paid on or before August 15, 2021.

*See,* Ex. "C" at Sec 2.

37.     Section 5 of the Desatnik Note entitled "Default" provides:

The occurrence of any of the following shall constitute an event of default ("Event of Default"):

(b) **Failure to Pay**. [BMM] fails to pay, when due, any of the obligations provided for in this [Desatnik] Note at their due date or under any other note or obligations of [BMM] to [Desatnik].

7

*Id.* at Sec 5(a).

38.     Pursuant to Section 6 of the Desatnik Note entitled "Remedies", it was agreed that:

(a) **Acceleration**. Upon the occurrence of an Event of Default and for so long as such default is continuing:

i.      The total amount of (a) this [Desatnik] Note and all other sums owing to Payee which are (i) then due and unpaid or (ii) thereafter to become due and payable; and (b) interest on the foregoing sums, at the rate of one and one-half percent (1 ½ %) per month, but no greater than the highest rate permitted by law, from said occurrence until paid in full (collectively, the "Default Amount") shall, when such Default Amounts is declared due and payable by [Desatnik], become immediately due and payable without presentment, protest, demand, or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Agreement to the contrary notwithstanding; and

ii.     [Desatnik] may exercise any of the other remedies provide under applicable laws.

*Id.* at Sec. 6.

39.     On July 20, 2020, Desatnik's counsel emailed BMM a reminder that the first installment payment under the Desatnik Note was due on August 15, 2020.

40.     BMM failed to pay the initial payment of $92,813.00 under the Desatnik Note on August 15, 2020 and failed to pay the remaining $92,812.00 on or before August 15, 2021.

41.     On August 23, 2021, Desatnik's counsel emailed BMM informing BMM that the Desatnik Note was in default as a result of BMM's non-payment pursuant to the terms of the Desatnik Note and demanded immediate payment of the monies owed to Desatnik.

42.     On December 3, 2021, Desatnik served BMM with notice that it was in default under the Desatnik Note and, despite no obligation to do so under the Desatnik Note, Desatnik made a demand on BMM to pay the full Desatnik Principal Balance with all past due interest no

8

later than December 10, 2021 (the "**Desatnik Demand Letter**"). A true and correct copy of the Desatnik Demand Letter is attached hereto as **Composite Exhibit "D."**

43.     BMM ignored the Desatnik Demand Letter, failed to respond to the Desatnik Demand Letter and failed to make payment of the Desatnik Principal Balance.

44.     There was never a modification or amendment of the Desatnik Note.

45.     All amounts due and owing under the Desatnik Note remain outstanding as of the date of the filing of this Complaint.

46.     Plaintiffs retained the services of the undersigned law firm to represent them in this action, and are obligated to pay said law firm attorney's fees and costs for their services.

47.     All conditions precedent to the maintenance of this action have occurred, been performed, or have been waived, excused, or satisfied.

## COUNT I – BREACH OF THE WINSHMAN PROMISSORY NOTE

Plaintiff, JOEY WINSHMAN, sues Defendant, BRIGHT MOUNTAIN MEDIA, INC., adopts and realleges the allegations contained in paragraphs 1 through 25 and 46 through 47 above, as if fully and expressly set forth herein, and further alleges as follows:

48.     On August 15, 2019, BMM executed and delivered the Winshman Note, whereby BMM promised to pay Winshman the sum of $270,937.50 with interest thereon as set forth in the Winshman Note. *See,* Ex. "A."

49.     The Winshman Note is a valid contract.

50.     Winshman is the owner and holder of the Winshman Note.

51.     BMM materially breached the Winshman Note by failing to pay in full the amounts due pursuant to Section 2 of the Winshman Note. *Id.*

52.     BMM is in default of the Winshman Note.

53.     BMM owes Winshman the principal balance of $270,937.50 under the Winshman Note that is due with interest, pursuant to the terms set forth in the Winshman Note.

54.     As a proximate and direct cause of BMM's non-payment of the Winshman Note, Winshman has been damaged.

55.     Winshman is obligated to pay his attorneys a reasonable fee for their services, and pursuant to the Winshman Note, Winshman is entitled to recover his reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, JOEY WINSHMAN, hereby demands judgment against Defendant, BRIGHT MOUNTAIN MEDIA, INC., for damages, costs, pre and post judgment interest, attorneys' fees, and costs, and for such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF THE SLUTZKY PROMISSORY NOTE

Plaintiff, NADAV SLUTZKY, sues Defendant, BRIGHT MOUNTAIN MEDIA, INC., adopts and realleges the allegations contained in paragraphs 1 through 15, 26 thorough 35, and 46 through 47 above, as if fully and expressly set forth herein, and further alleges as follows:

56.     On August 15, 2019, BMM executed and delivered the Slutzky Note, whereby BMM promised to pay Slutzky the sum of $293,437.50 with interest thereon as set forth in the Slutzky Note. *See,* Ex. "B."

57.     The Slutzky Note is a valid contract.

58.     Slutzky is the owner and holder of the Slutzky Note.

59.     BMM materially breached the Slutzky Note by failing to pay in full the amounts due pursuant to Section 2 of the Slutzky Note. *Id.*

60.     BMM is in default of the Slutzky Note.

61.     BMM owes Slutzky the principal balance of $293,437.50 under the Slutzky Note that is due with interest, pursuant to the terms set forth in the Slutzky Note.

62.     As a proximate and direct cause of BMM's non-payment of the Slutzky Note, Slutzky has been damaged.

63.     Slutzky is obligated to pay his attorneys a reasonable fee for their services, and pursuant to the Slutzky Note, Slutzky is entitled to recover his reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, NADAV SLUTZKY, hereby demands judgment against Defendant, BRIGHT MOUNTAIN MEDIA, INC., for damages, costs, pre and post judgment interest, attorneys' fees, and costs, and for such other and further relief as this Court deems just and proper.

## COUNT III – BREACH OF THE DESATNIK PROMISSORY NOTE

Plaintiff, ELI DESATNIK, sues Defendant, BRIGHT MOUNTAIN MEDIA, INC., adopts and realleges the allegations contained in paragraphs 1 through 15 and 36 through 47 above, as if fully and expressly set forth herein, and further alleges as follows:

64.     On August 15, 2019, BMM executed and delivered the Desatnik Note, whereby BMM promised to pay Desatnik the sum of $185,625.00 with interest thereon as set forth in the Desatnik Note. *See,* Ex. "C."

65.     The Desatnik Note is a valid contract.

66.     Desatnik is the owner and holder of the Desatnik Note.

67.     BMM materially breached the Desatnik Note by failing to pay in full the amounts due pursuant to Section 2 of the Desatnik Note. *Id.*

68.     BMM is in default of the Desatnik Note.

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., 27TH FLOOR, MIAMI, FL 33131  305.379.9000

69.     BMM owes Desatnik the principal balance of $185,625.00 under the Desatnik Note that is due with interest, pursuant to the terms set forth in the Desatnik Note.

70.     As a proximate and direct cause of BMM's non-payment of the Desatnik Note, Desatnik has been damaged.

71.     Desatnik is obligated to pay his attorneys a reasonable fee for their services, and pursuant to the Desatnik Note, Desatnik is entitled to recover his reasonable attorney's fees and costs.

WHEREFORE, Plaintiff, ELI DESATNIK, hereby demands judgment against Defendant, BRIGHT MOUNTAIN MEDIA, INC., for damages, costs, pre and post judgment interest, attorneys' fees, and costs, and for such other and further relief as this Court deems just and proper.

## COUNT IV – UNJUST ENRICHMENT

Plaintiff, JOEY WINSHMAN, sues Defendant, BRIGHT MOUNTAIN MEDIA, INC., adopts and realleges the allegations contained in paragraphs 2 through 13 and 46 through 47 above, as if fully and expressly set forth herein, and further alleges as follows:

72.     This claim for unjust enrichment is pled by Winshman in the alternative to Count I.

73.     BMM has knowledge of, appreciation for, and voluntarily accepted and retained the benefits conferred on it by Winshman.

74.     BMM owes Winshman the amount of $270,937.50 as of August 15, 2021.

75.     To date, BMM has failed and/or refused to pay Winshman $270,937.50.

76.     The circumstances are such that it would be inequitable, and BMM will be unjustly enriched and Winshman unjustly prejudiced, if BMM is permitted to retain the benefit and use of

KLUGER, KAPLAN, SILVERMAN, KATZEN & LEVINE, P.L., 201 SO. BISCAYNE BLVD., 27TH FLOOR, MIAMI, FL 33131  305.379.9000

the monies wrongfully retained and owed to Winshman without being required to pay said sum or the value thereof.

77.     BMM has been unjustly enriched to Winshman's detriment.

78.     Winshman has sustained, and continues to suffer, substantial damages as a direct and proximate result of BMM's unjust enrichment.

79.     Winshman has no adequate remedy at law.

WHEREFORE, Plaintiff, JOEY WINSHMAN, hereby demands judgment against Defendant, BRIGHT MOUNTAIN MEDIA, INC., for compensatory, consequential, incidental, and special damages, pre and post judgment interest, costs, and for such other and further relief as this Court deems just and proper.

## COUNT V – UNJUST ENRICHMENT

Plaintiff, NADAV SLUTZKY, sues Defendant, BRIGHT MOUNTAIN MEDIA, INC., adopts and realleges the allegations contained in paragraphs 2 through 13 and 46 through 47 above, as if fully and expressly set forth herein, and further alleges as follows:

80.     This claim for unjust enrichment is pled by Slutzky in the alternative to Count II.

81.     BMM has knowledge of, appreciation for, and voluntarily accepted and retained the benefits conferred on it by Slutzky.

82.     BMM owes Slutzky the amount of $293,437.50 as of August 15, 2021.

83.     To date, BMM has failed and/or refused to pay Slutzky $293,437.50.

84.     The circumstances are such that it would be inequitable, and BMM will be unjustly enriched and Slutzky unjustly prejudiced, if BMM is permitted to retain the benefit and use of the monies wrongfully retained and owed to Slutzky without being required to pay said sum or the value thereof.

13

85.     BMM has been unjustly enriched to Slutzky's detriment.

86.     Slutzky has sustained, and continues to suffer, substantial damages as a direct and proximate result of BMM's unjust enrichment.

87.     Slutzky has no adequate remedy at law.

WHEREFORE, Plaintiff, NADAV SLUTZKY, hereby demands judgment against Defendant, BRIGHT MOUNTAIN MEDIA, INC., for compensatory, consequential, incidental, and special damages, pre and post judgment interest, costs, and for such other and further relief as this Court deems just and proper.

### COUNT VI – UNJUST ENRICHMENT

Plaintiff, ELI DESATNIK, sues Defendant, BRIGHT MOUNTAIN MEDIA, INC., adopts and realleges the allegations contained in paragraphs 2 through 13 and 46 through 47, as if fully and expressly set forth herein, and further alleges as follows:

88.     This claim for unjust enrichment is pled by Desatnik in the alternative to Count III.

89.     BMM has knowledge of, appreciation for, and voluntarily accepted and retained the benefits conferred on it by Desatnik.

90.     BMM owes Desatnik the amount of $185,625.00 as of August 15, 2021.

91.     To date, BMM has failed and/or refused to pay Slutzky $185,625.00.

92.     The circumstances are such that it would be inequitable, and BMM will be unjustly enriched and Desatnik unjustly prejudiced, if BMM is permitted to retain the benefit and use of the monies wrongfully retained and owed to Desatnik without being required to pay said sum or the value thereof.

93.     BMM has been unjustly enriched to Desatnik's detriment.

94.     Desatnik has sustained, and continues to suffer, substantial damages as a direct and proximate result of BMM's unjust enrichment.

95.     Desatnik has no adequate remedy at law.

WHEREFORE, Plaintiff, ELI DESATNIK, hereby demands judgment against Defendant, BRIGHT MOUNTAIN MEDIA, INC., for compensatory, consequential, incidental, and special damages, pre and post judgment interest, costs, and for such other and further relief as this Court deems just and proper.

**DATED:** December 17, 2021

Respectfully submitted,

**KLUGER, KAPLAN, SILVERMAN, KATZEN, & LEVINE, P.L.**
*Counsel for Plaintiffs*
201 S. Biscayne Blvd., Suite 2700
Miami, Florida 33131
Tel: (305) 379-9000
Fax: (305) 379-3428

By: */s/ Marko Cerenko*
        Marko F. Cerenko, Esq.
        Fla. Bar No.: 21501
        mcerenko@klugerkaplan.com
        Jeremy R. Kreines, Esq.
        Fla. Bar No.: 101119
        jkreines@klugerkaplan.com

# EXHIBIT "A"

<u>**EXHIBIT D**</u>

**FORM OF PROMISSORY NOTE**

Boca Raton, FL
August 15, 2019                                                                      $270,937.5

      **FOR VALUE RECEIVED**, the undersigned, **Bright Mountain Media, Inc**., a Florida corporation (the "**Maker**"), having a business address at 6400 Congress Avenue, Suite 2050, Boca Raton, FL  33487 hereby promises to pay to the order of Joey Winshman, an individual (the "**Payee**" or the "**Holder**") having a business address at 74 Hamelachim St. Ramat Hasharon, Israel 47100, in lawful money of the United States of America the principal amount of Two Hundred and Seventy Thousand, Nine Hundred and Thirty Seven dollars and Fifty cents ($270,937.5).  This Promissory Note (the "**Note**") is one of a series of notes issued pursuant to the terms and conditions of that certain Share Exchange Agreement and Plan of Merger dated July 31, 2019 by and among the Maker, Merger Sub, Slutzky & Winshman, Ltd. ("**S&W**"), and the shareholders of S&W (the "**Agreement**"). All terms not otherwise defined herein shall have the same meaning as in the Agreement.

      1.    **Interest**.  Subject to the provisions of Section 6 hereof, this Note shall be interest free.

      2.    **Principal; Payment**.  Subject to the provisions of Section 4 hereof, the principal amount of this Note shall be payable by Maker in lawful tender of the United States as follows:

      a.    $135,469 shall be paid on or before August 15, 2020 (the "**Milestone Date**"); and

      b.    the remaining $135,468.5 shall be paid on or before August 15, 2021.

      All payments of principal shall be made in U.S. Dollars to the Payee at the address set forth in the Agreement.

      3.    **Prepayment.**  From and after the date hereof, Maker shall have the option to prepay, in whole or in part, the principal balance of this Note.  There is no prepayment penalty.

      4.    **Forgiveness of Note**.  In the event: (a) the Payee cease to provide continuous services to S&W, or any affiliate thereof employing or retaining the Payee, in the capacity of an employee, consultant or other service provider following termination of the Employment Agreement of even date herewith by and between S&W and the Payee, as amended or restated from time to time (the "**Engagement Agreement**") (i) for Cause, as such term is defined in Section 7.4 thereof, or (ii) voluntary termination by the Payee pursuant to Section 7 thereof, other than termination for Good Reason, as such term is defined below, and other than for death or Entitling Event (as such term is defined in Section 7.3 thereof), and (b) S&W fails to achieve the following milestones on or before the Milestone Date: (i) develop a minimum of 10 Smart TV applications, and (ii) API integration with a minimum of two platforms, then all outstanding principal amounts due by Maker under this Note shall be cancelled and forgiven without any further action by either party.

      For purposes of this Note, the term "Good Reason" shall mean (i) a reduction of 10% or more in the compensation or benefits of the Payee, not otherwise agreed to in writing by Payee; (ii) a reduction or diminution of the Payee's title or position or reduction of Payee duties or responsibilities, or the removal of the Payee from such duties, title, position and responsibilities; (iii) a relocation of the Payee's principle place of employment, without the Payee's consent, by more than 50 kilometers; (iv) a material breach by S&W of the Engagement Agreement, which is not cured (if curable) within 10 days after receipt of

written notice thereof from the Payee; (v) a delay in any payment due by S&W under the Engagement Agreement, which is not cured (if curable) within ten (10) days after receipt of written notice thereof from the Payee; or (vi) other circumstances which under Israeli law would entitle the Payee to resign and deem such resignation as termination by S&W for the purpose of severance pay.

5.    **Default.**   The occurrence of any of the following shall constitute an event of default ("**Event of Default**"):

a.    <u>Failure to Pay</u>.  Maker fails to pay, when due, any of the obligations provided for in this Note at their due date or under any other note or obligations of Maker to the Payee;

b.    <u>Denominated Events</u>.  The occurrence of any event expressly denominated as an Event of Default in this Note;

c.    <u>Failure to Perform</u>.  Maker fails to perform or observe any material covenant, term or condition of this Note, the Agreement or any other note or obligation issued or owing in respect to Payee and to be performed or observed by Maker, and such failure continues unremedied for a period of ten (10) days after written or facsimile notice from Payee to Maker of such failure; or the Note and/or Agreement shall cease to be, or shall be asserted by Maker not to be a, legal, valid and binding obligation of Maker, enforceable in accordance with its terms;

d.    <u>Breach of Representation</u>. Any representation, warranty or certificate made or furnished by or on behalf of Maker in writing pursuant to this Note or the Agreement, including, but not limited to, the representations or warranties made by Maker in Section 5 of the Agreement, shall be false, incorrect, incomplete or misleading in any material respect when made or furnished and such breach continues unremedied for a period of ten (10) days after written or facsimile notice from Payee to Maker of such breach;

e.    <u>Petition By or Against Maker</u>.  (a) There is filed by or against Maker any petition or complaint with respect to its own financial condition under any state or federal bankruptcy law or any amendment thereto (including, without limitation, a petition or reorganization, arrangement or extension of debts) or under any other similar or insolvency laws providing for the relief of debtors; (b) Maker is unable, or admits in writing its inability, to pay its debts generally as they mature; (c) Maker makes a general assignment for the benefit of its creditors; or (g) takes any action for the purpose of effecting any of the foregoing; or

f.    <u>Appointment of Receiver</u>.   A receiver, trustee, conservator or liquidator is appointed for Maker, or for all or a substantial part of its assets, or Maker shall be adjudicated bankrupt or in need of any relief provided to debtors by any court.

6.    **Remedies.**

a.    <u>Acceleration</u>.  Upon the occurrence of an Event of Default and for so long as such default is continuing:

i.   The total amount of (a) this Note and all other sums owing to Payee which are (i) then due and unpaid or (ii) thereafter to become due and payable; and (b) interest on the foregoing sums, at the rate of one and one-half percent (1 ½%) per month, but not greater than the highest rate permitted by law, from said occurrence until

paid in full (collectively, the "**Default Amount**") shall, when such Default Amounts is declared due and payable by Payee, become immediately due and payable without presentment, protest,  demand, or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Agreement to the contrary notwithstanding; and

ii.  Payee may exercise any of the other remedies provided under applicable laws.

7.  **Cumulative Remedies; Waivers.**  No remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Payee at law or in equity.  No express or implied waiver by Payee of any default or Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent default or Event of Default.  The failure or delay of Payee in exercising any rights granted it hereunder or under any occurrence of any of the contingencies set forth herein shall not constitute a waiver of any such right upon the continuation or recurrence of any such contingencies or similar contingencies, and any single or partial exercise of any particular right by Payee shall not exhaust the same or constitute a waiver of any other right provided herein.

8.  **Costs and Expenses.**  Maker shall be liable for all costs, charges and expenses incurred by Payee by reason of the occurrence of any Event of Default, an action is institute to collect this Note, or the exercise of Payee's remedies with respect thereto, including, without limitation, reasonable attorneys' fees and costs, incurred in connection with respect thereto, and Maker hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

9.  **Other Remedies.**  The remedies granted to Payee herein upon an Event of Default are not restrictive of any and all other rights and remedies of Payee provided for by this Note, the Agreement, or any of the relevant documents and applicable law, either by suit in equity or by action at law, or both.

10.  **Offset**.  The parties acknowledge that this Note is subject to further offset and adjustment as provided under the Agreement.

11.  **Miscellaneous.**

a.  Waivers.  No waiver of any term or condition of this Note shall be construed to be a waiver of any succeeding breach of the same term or condition.  No failure or delay of Payee to exercise any power hereunder, or it insists upon strict compliance by Maker of any obligations hereunder, and no custom or other practice at variance with the terms hereof shall constitute a waiver of the right of Payee to demand exact compliance with such terms.

b.  Invalid Terms.  In the event any provision contained in this Note shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

c.  Successors.  This Note shall be binding upon Maker, its legal representatives, successors and assigns, and inure to the benefit of Payee, its legal representatives, successors and assigns.

3

    d.    <u>Controlling Law</u>.  This Note shall be read, construed and governed in all respects in accordance with the laws of the State of Florida. The Payee expressly and irrevocably: (1) agree that any legal suit, action or proceeding arising out of or relating to this Note will be instituted exclusively in United States District Court for the Southern District of Florida, West Palm Beach, Florida; (2) waive any objection they may have now or hereafter to the venue of any such suit, action or proceeding; and (3) consent to the in personam jurisdiction of United States District Court for the Southern District of Florida, West Palm Beach, Florida in any such suit, action or proceeding.  The Payee further agrees to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding in the United States District Court for the Southern District of Florida, West Palm Beach, Florida and agrees that service of process upon it mailed by certified mail to its address will be deemed in every respect effective service of process upon it, in any such suit, action or proceeding.

    e.    <u>Amendments</u>.  This Note and the Agreement embody the entire agreement and understanding of the parties hereto with respect to the subject matter hereof, and the terms set forth in this Note and the Agreement supersede all prior agreements, arrangements, understandings and undertakings, written or oral, relating to the subject matter hereof, if any. This Note may be amended only by an instrument in writing and executed by Maker and Payee.

    f.    This Note may be executed in any number of counterparts, each of which will be deemed to be original and all of which together will constitute a single agreement.

    g.    Upon receipt by Maker of evidence satisfactory to it of the loss, theft, destruction or mutilation of this Note or any Note exchanged for it, and indemnity satisfactory to Maker (in case of loss, theft or destruction) or surrender and cancellation of such Note (in the case of mutilation), Maker will make and deliver in lieu of such Note a new Note of like tenor.

12.    **Notices**.  All notices, request, demands and other communications required or permitted to be given hereunder shall be sufficiently given if addressed to the addresses as set forth in the Agreement, posted in the U.S. Mail by certified or registered mail, return receipt requested or by overnight mail, including appropriate receipts.  Any party may change said address by giving the other party hereto notice of such change of address.  Notice given as hereinabove prescribed shall be deemed given on the date of its deposit in the U.S. Mail or with the overnight delivery service.

13.    **Headings.**  All section and subsection headings herein, wherever they appear, are for convenience only and shall not affect the construction of any terms herein.

*[Remainder of Page Left Intentionally Blank]*

**IN WITNESS WHEREOF**, the undersigned has caused this Note to be executed by its duly authorized officer and its seal affixed hereto, as of the day and year first above written.

**Bright Mountain Media, Inc.**

By: _____

W. Kip Speyer, Chief Executive Officer

**Acknowledged and agreed to:**

_____

Payee

**IN WITNESS WHEREOF**, the undersigned has caused this Note to be executed by its duly authorized officer and its seal affixed hereto, as of the day and year first above written.

**Bright Mountain Media, Inc.**

By: _____
        W. Kip Speyer, Chief Executive Officer

**Acknowledged and agreed to:**

_____
Joey Winshman

[*Signature Page – Note – August 2019*]

# EXHIBIT "B"

**EXHIBIT D**

**FORM OF PROMISSORY NOTE**

Boca Raton, FL
August 15, 2019                                                                                    $293,437.5

**FOR VALUE RECEIVED**, the undersigned, **Bright Mountain Media, Inc**., a Florida corporation (the "**Maker**"), having a business address at 6400 Congress Avenue, Suite 2050, Boca Raton, FL  33487 hereby promises to pay to the order of Nadav Slutzky, an individual (the "**Payee**" or the "**Holder**") having a business address at HaShahar 54, Raanana, Israel in lawful money of the United States of America the principal amount of Two Hundred and Ninety Three Thousand, Four Hundred and Thirty Seven dollars and Fifty cents ($293,437.5).  This Promissory Note (the "**Note**") is one of a series of notes issued pursuant to the terms and conditions of that certain Share Exchange Agreement and Plan of Merger dated July 31, 2019 by and among the Maker, Merger Sub, Slutzky & Winshman, Ltd. ("**S&W**"), and the shareholders of S&W (the "**Agreement**"). All terms not otherwise defined herein shall have the same meaning as in the Agreement.

1.      **Interest**.  Subject to the provisions of Section 6 hereof, this Note shall be interest free.

2.      **Principal; Payment**.  Subject to the provisions of Section 4 hereof, the principal amount of this Note shall be payable by Maker in lawful tender of the United States as follows:

        a.      $146,719 shall be paid on or before August 15, 2020 (the "**Milestone Date**"); and

        b.      the remaining $146,718.5 shall be paid on or before August 15, 2021.

All payments of principal shall be made in U.S. Dollars to the Payee at the address set forth in the Agreement.

3.      **Prepayment.**  From and after the date hereof, Maker shall have the option to prepay, in whole or in part, the principal balance of this Note.  There is no prepayment penalty.

4.      **Forgiveness of Note**.  In the event: (a) the Payee cease to provide continuous services to S&W, or any affiliate thereof employing or retaining the Payee, in the capacity of an employee, consultant or other service provider following termination of the Services Agreement of even date herewith by and between S&W and the Payee, as amended or restated from time to time (the "**Engagement Agreement**") (i) for Cause, as such term is defined in Section 4.3.1 thereof, or (ii) voluntary termination by the Payee pursuant to Section 4 thereof, other than termination for Good Reason, as such term is defined below, and other than for death or Disability (as such term is defined in Section 4.3.1 thereof), and (b) S&W fails to achieve the following milestones on or before the Milestone Date: (i) develop a minimum of 10 Smart TV applications, and (ii) API integration with a minimum of two platforms, then all outstanding principal amounts due by Maker under this Note shall be cancelled and forgiven without any further action by either party.

For purposes of this Note, the term "Good Reason" shall mean (i) a reduction of 10% or more in the compensation or benefits of the Payee, not otherwise agreed to in writing by Payee; (ii) a reduction or diminution of the Payee's title or position or reduction of Payee duties or responsibilities, or the removal of the Payee from such duties, title, position and responsibilities; (iii) a relocation of the Payee's principle place of employment, without the Payee's consent, by more than 50 kilometers; (iv) a material breach by S&W of the Engagement Agreement, which is not cured (if curable) within 10 days after receipt of

1

written notice thereof from the Payee; (v) a delay in any payment due by S&W under the Engagement Agreement, which is not cured (if curable) within ten (10) days after receipt of written notice thereof from the Payee; or (vi) other circumstances which under Israeli law would entitle the Payee to resign and deem such resignation as termination by S&W for the purpose of severance pay.

5. **Default.**  The occurrence of any of the following shall constitute an event of default ("**Event of Default**"):

   a.   <u>Failure to Pay</u>.  Maker fails to pay, when due, any of the obligations provided for in this Note at their due date or under any other note or obligations of Maker to the Payee;

   b.   <u>Denominated Events</u>.  The occurrence of any event expressly denominated as an Event of Default in this Note;

   c.   <u>Failure to Perform</u>.  Maker fails to perform or observe any material covenant, term or condition of this Note, the Agreement or any other note or obligation issued or owing in respect to Payee and to be performed or observed by Maker, and such failure continues unremedied for a period of ten (10) days after written or facsimile notice from Payee to Maker of such failure; or the Note and/or Agreement shall cease to be, or shall be asserted by Maker not to be a, legal, valid and binding obligation of Maker, enforceable in accordance with its terms;

   d.   <u>Breach of Representation</u>. Any representation, warranty or certificate made or furnished by or on behalf of Maker in writing pursuant to this Note or the Agreement, including, but not limited to, the representations or warranties made by Maker in Section 5 of the Agreement, shall be false, incorrect, incomplete or misleading in any material respect when made or furnished and such breach continues unremedied for a period of ten (10) days after written or facsimile notice from Payee to Maker of such breach;

   e.   <u>Petition By or Against Maker</u>.  (a) There is filed by or against Maker any petition or complaint with respect to its own financial condition under any state or federal bankruptcy law or any amendment thereto (including, without limitation, a petition or reorganization, arrangement or extension of debts) or under any other similar or insolvency laws providing for the relief of debtors; (b) Maker is unable, or admits in writing its inability, to pay its debts generally as they mature; (c) Maker makes a general assignment for the benefit of its creditors; or (g) takes any action for the purpose of effecting any of the foregoing; or

   f.   <u>Appointment of Receiver</u>.  A receiver, trustee, conservator or liquidator is appointed for Maker, or for all or a substantial part of its assets, or Maker shall be adjudicated bankrupt or in need of any relief provided to debtors by any court.

6. **Remedies.**

   a.   <u>Acceleration</u>.  Upon the occurrence of an Event of Default and for so long as such default is continuing:

      i.   The total amount of (a) this Note and all other sums owing to Payee which are (i) then due and unpaid or (ii) thereafter to become due and payable; and (b) interest on the foregoing sums, at the rate of one and one-half percent (1 ½%) per month, but not greater than the highest rate permitted by law, from said occurrence until

2

paid in full (collectively, the "**Default Amount**") shall, when such Default Amounts is declared due and payable by Payee, become immediately due and payable without presentment, protest, demand, or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Agreement to the contrary notwithstanding; and

    ii.   Payee may exercise any of the other remedies provided under applicable laws.

7.    **Cumulative Remedies; Waivers.**  No remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Payee at law or in equity.  No express or implied waiver by Payee of any default or Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent default or Event of Default.  The failure or delay of Payee in exercising any rights granted it hereunder or under any occurrence of any of the contingencies set forth herein shall not constitute a waiver of any such right upon the continuation or recurrence of any such contingencies or similar contingencies, and any single or partial exercise of any particular right by Payee shall not exhaust the same or constitute a waiver of any other right provided herein.

8.    **Costs and Expenses.**  Maker shall be liable for all costs, charges and expenses incurred by Payee by reason of the occurrence of any Event of Default, an action is institute to collect this Note, or the exercise of Payee's remedies with respect thereto, including, without limitation, reasonable attorneys' fees and costs, incurred in connection with respect thereto, and Maker hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

9.    **Other Remedies.**  The remedies granted to Payee herein upon an Event of Default are not restrictive of any and all other rights and remedies of Payee provided for by this Note, the Agreement, or any of the relevant documents and applicable law, either by suit in equity or by action at law, or both.

10.    **Offset**.  The parties acknowledge that this Note is subject to further offset and adjustment as provided under the Agreement.

11.    **Miscellaneous.**

    a.    Waivers.  No waiver of any term or condition of this Note shall be construed to be a waiver of any succeeding breach of the same term or condition.  No failure or delay of Payee to exercise any power hereunder, or it insists upon strict compliance by Maker of any obligations hereunder, and no custom or other practice at variance with the terms hereof shall constitute a waiver of the right of Payee to demand exact compliance with such terms.

    b.    Invalid Terms.  In the event any provision contained in this Note shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

    c.    Successors.  This Note shall be binding upon Maker, its legal representatives, successors and assigns, and inure to the benefit of Payee, its legal representatives, successors and assigns.

      d.    <u>Controlling Law</u>.  This Note shall be read, construed and governed in all respects in accordance with the laws of the State of Florida. The Payee expressly and irrevocably: (1) agree that any legal suit, action or proceeding arising out of or relating to this Note will be instituted exclusively in United States District Court for the Southern District of Florida, West Palm Beach, Florida; (2) waive any objection they may have now or hereafter to the venue of any such suit, action or proceeding; and (3) consent to the in personam jurisdiction of United States District Court for the Southern District of Florida, West Palm Beach, Florida in any such suit, action or proceeding.  The Payee further agrees to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding in the United States District Court for the Southern District of Florida, West Palm Beach, Florida and agrees that service of process upon it mailed by certified mail to its address will be deemed in every respect effective service of process upon it, in any such suit, action or proceeding.

      e.    <u>Amendments</u>.  This Note and the Agreement embody the entire agreement and understanding of the parties hereto with respect to the subject matter hereof, and the terms set forth in this Note and the Agreement supersede all prior agreements, arrangements, understandings and undertakings, written or oral, relating to the subject matter hereof, if any. This Note may be amended only by an instrument in writing and executed by Maker and Payee.

      f.    This Note may be executed in any number of counterparts, each of which will be deemed to be original and all of which together will constitute a single agreement.

      g.    Upon receipt by Maker of evidence satisfactory to it of the loss, theft, destruction or mutilation of this Note or any Note exchanged for it, and indemnity satisfactory to Maker (in case of loss, theft or destruction) or surrender and cancellation of such Note (in the case of mutilation), Maker will make and deliver in lieu of such Note a new Note of like tenor.

12.    **Notices**.  All notices, request, demands and other communications required or permitted to be given hereunder shall be sufficiently given if addressed to the addresses as set forth in the Agreement, posted in the U.S. Mail by certified or registered mail, return receipt requested or by overnight mail, including appropriate receipts.  Any party may change said address by giving the other party hereto notice of such change of address.  Notice given as hereinabove prescribed shall be deemed given on the date of its deposit in the U.S. Mail or with the overnight delivery service.

13.    **Headings.**  All section and subsection headings herein, wherever they appear, are for convenience only and shall not affect the construction of any terms herein.

*[Remainder of Page Left Intentionally Blank]*

**IN WITNESS WHEREOF**, the undersigned has caused this Note to be executed by its duly authorized officer and its seal affixed hereto, as of the day and year first above written.

**Bright Mountain Media, Inc.**

By: _____

W. Kip Speyer, Chief Executive Officer

**Acknowledged and agreed to:**

_____

Payee

5

**IN WITNESS WHEREOF**, the undersigned has caused this Note to be executed by its duly authorized officer and its seal affixed hereto, as of the day and year first above written.

**Bright Mountain Media, Inc.**

By: _____
       W. Kip Speyer, Chief Executive Officer

**Acknowledged and agreed to:**

_____
Nadav Slutzky

[*Signature Page – Note – August 2019*]

# EXHIBIT "C"

<u>**EXHIBIT D**</u>

**FORM OF PROMISSORY NOTE**

Boca Raton, FL
August 15, 2019                                                                                    $185,625

      **FOR VALUE RECEIVED**, the undersigned, **Bright Mountain Media, Inc**., a Florida corporation (the "**Maker**"), having a business address at 6400 Congress Avenue, Suite 2050, Boca Raton, FL  33487 hereby promises to pay to the order of Eli Desatnik, an individual (the "**Payee**" or the "**Holder**") having a business address at Yitskhak Rabin St 20 A , Holon, 5845120, Israel in lawful money of the United States of America the principal amount of One Hundred and Eighty Five Thousand, Six Hundred and Twenty Five dollars ($185,625).  This Promissory Note (the "**Note**") is one of a series of notes issued pursuant to the terms and conditions of that certain Share Exchange Agreement and Plan of Merger dated July 31, 2019 by and among the Maker, Merger Sub, Slutzky & Winshman, Ltd. ("**S&W**"), and the shareholders of S&W (the "**Agreement**"). All terms not otherwise defined herein shall have the same meaning as in the Agreement.

      1.    **Interest**.  Subject to the provisions of Section 6 hereof, this Note shall be interest free.

      2.    **Principal; Payment**.  Subject to the provisions of Section 4 hereof, the principal amount of this Note shall be payable by Maker in lawful tender of the United States as follows:

      a.    $92,813 shall be paid on or before August 15, 2020 (the "**Milestone Date**"); and

      b.    the remaining $92,812 shall be paid on or before August 15, 2021.

      All payments of principal shall be made in U.S. Dollars to the Payee at the address set forth in the Agreement.

      3.    **Prepayment.**  From and after the date hereof, Maker shall have the option to prepay, in whole or in part, the principal balance of this Note.  There is no prepayment penalty.

      4.    **Forgiveness of Note**.  In the event: S&W fails to achieve the following milestones on or before the Milestone Date: (i) develop a minimum of 10 Smart TV applications, and (ii) API integration with a minimum of two platforms, then all outstanding principal amounts due by Maker under this Note shall be cancelled and forgiven without any further action by either party.

      For purposes of this Note, the term "Good Reason" shall mean (i) a reduction of 10% or more in the compensation or benefits of the Payee, not otherwise agreed to in writing by Payee; (ii) a reduction or diminution of the Payee's title or position or reduction of Payee duties or responsibilities, or the removal of the Payee from such duties, title, position and responsibilities; (iii) a relocation of the Payee's principle place of employment, without the Payee's consent, by more than 50 kilometers; (iv) a material breach by S&W of the Engagement Agreement, which is not cured (if curable) within 10 days after receipt of written notice thereof from the Payee; (v) a delay in any payment due by S&W under the Engagement Agreement, which is not cured (if curable) within ten (10) days after receipt of written notice thereof from the Payee; or (vi) other circumstances which under Israeli law would entitle the Payee to resign and deem such resignation as termination by S&W for the purpose of severance pay.

      5.    **Default.**  The occurrence of any of the following shall constitute an event of default ("**Event of Default**"):

a.     <u>Failure to Pay</u>.  Maker fails to pay, when due, any of the obligations provided for in this Note at their due date or under any other note or obligations of Maker to the Payee;

b.     <u>Denominated Events</u>.  The occurrence of any event expressly denominated as an Event of Default in this Note;

c.     <u>Failure to Perform</u>.  Maker fails to perform or observe any material covenant, term or condition of this Note, the Agreement or any other note or obligation issued or owing in respect to Payee and to be performed or observed by Maker, and such failure continues unremedied for a period of ten (10) days after written or facsimile notice from Payee to Maker of such failure; or the Note and/or Agreement shall cease to be, or shall be asserted by Maker not to be a, legal, valid and binding obligation of Maker, enforceable in accordance with its terms;

d.     <u>Breach of Representation</u>. Any representation, warranty or certificate made or furnished by or on behalf of Maker in writing pursuant to this Note or the Agreement, including, but not limited to, the representations or warranties made by Maker in Section 5 of the Agreement, shall be false, incorrect, incomplete or misleading in any material respect when made or furnished and such breach continues unremedied for a period of ten (10) days after written or facsimile notice from Payee to Maker of such breach;

e.     <u>Petition By or Against Maker</u>.  (a) There is filed by or against Maker any petition or complaint with respect to its own financial condition under any state or federal bankruptcy law or any amendment thereto (including, without limitation, a petition or reorganization, arrangement or extension of debts) or under any other similar or insolvency laws providing for the relief of debtors; (b) Maker is unable, or admits in writing its inability, to pay its debts generally as they mature; (c) Maker makes a general assignment for the benefit of its creditors; or (g) takes any action for the purpose of effecting any of the foregoing; or

f.     <u>Appointment of Receiver</u>.  A receiver, trustee, conservator or liquidator is appointed for Maker, or for all or a substantial part of its assets, or Maker shall be adjudicated bankrupt or in need of any relief provided to debtors by any court.

6.     **<u>Remedies.</u>**

a.     <u>Acceleration</u>.  Upon the occurrence of an Event of Default and for so long as such default is continuing:

    i.   The total amount of (a) this Note and all other sums owing to Payee which are (i) then due and unpaid or (ii) thereafter to become due and payable; and (b) interest on the foregoing sums, at the rate of one and one-half percent (1 ½%) per month, but not greater than the highest rate permitted by law, from said occurrence until paid in full (collectively, the "**<u>Default Amount</u>**") shall, when such Default Amounts is declared due and payable by Payee, become immediately due and payable without presentment, protest,  demand, or any other notice of any kind, all of which are hereby expressly waived, anything contained herein or in the Agreement to the contrary notwithstanding; and

    ii.  Payee may exercise any of the other remedies provided under applicable laws.

2

7.      **Cumulative Remedies; Waivers.**   No remedy referred to herein is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Payee at law or in equity.  No express or implied waiver by Payee of any default or Event of Default hereunder shall in any way be, or be construed to be, a waiver of any future or subsequent default or Event of Default.  The failure or delay of Payee in exercising any rights granted it hereunder or under any occurrence of any of the contingencies set forth herein shall not constitute a waiver of any such right upon the continuation or recurrence of any such contingencies or similar contingencies, and any single or partial exercise of any particular right by Payee shall not exhaust the same or constitute a waiver of any other right provided herein.

8.      **Costs and Expenses.**   Maker shall be liable for all costs, charges and expenses incurred by Payee by reason of the occurrence of any Event of Default, an action is institute to collect this Note, or the exercise of Payee's remedies with respect thereto, including, without limitation, reasonable attorneys' fees and costs, incurred in connection with respect thereto, and Maker hereby waives notice of default, presentment or demand for payment, protest or notice of nonpayment or dishonor and all other notices or demands relative to this instrument.

9.      **Other Remedies.**   The remedies granted to Payee herein upon an Event of Default are not restrictive of any and all other rights and remedies of Payee provided for by this Note, the Agreement, or any of the relevant documents and applicable law, either by suit in equity or by action at law, or both.

10.     **Offset**.   The parties acknowledge that this Note is subject to further offset and adjustment as provided under the Agreement.

11.     **Miscellaneous.**

   a.      Waivers.  No waiver of any term or condition of this Note shall be construed to be a waiver of any succeeding breach of the same term or condition.  No failure or delay of Payee to exercise any power hereunder, or it insists upon strict compliance by Maker of any obligations hereunder, and no custom or other practice at variance with the terms hereof shall constitute a waiver of the right of Payee to demand exact compliance with such terms.

   b.      Invalid Terms.  In the event any provision contained in this Note shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Note, and this Note shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.

   c.      Successors.  This Note shall be binding upon Maker, its legal representatives, successors and assigns, and inure to the benefit of Payee, its legal representatives, successors and assigns.

   d.      Controlling Law.  This Note shall be read, construed and governed in all respects in accordance with the laws of the State of Florida. The Payee expressly and irrevocably: (1) agree that any legal suit, action or proceeding arising out of or relating to this Note will be instituted exclusively in United States District Court for the Southern District of Florida, West Palm Beach, Florida; (2) waive any objection they may have now or hereafter to the venue of any such suit, action or proceeding; and (3) consent to the in personam jurisdiction of United States

3

District Court for the Southern District of Florida, West Palm Beach, Florida in any such suit, action or proceeding. The Payee further agrees to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding in the United States District Court for the Southern District of Florida, West Palm Beach, Florida and agrees that service of process upon it mailed by certified mail to its address will be deemed in every respect effective service of process upon it, in any such suit, action or proceeding.

e. <u>Amendments</u>. This Note and the Agreement embody the entire agreement and understanding of the parties hereto with respect to the subject matter hereof, and the terms set forth in this Note and the Agreement supersede all prior agreements, arrangements, understandings and undertakings, written or oral, relating to the subject matter hereof, if any. This Note may be amended only by an instrument in writing and executed by Maker and Payee.

f. This Note may be executed in any number of counterparts, each of which will be deemed to be original and all of which together will constitute a single agreement.

g. Upon receipt by Maker of evidence satisfactory to it of the loss, theft, destruction or mutilation of this Note or any Note exchanged for it, and indemnity satisfactory to Maker (in case of loss, theft or destruction) or surrender and cancellation of such Note (in the case of mutilation), Maker will make and deliver in lieu of such Note a new Note of like tenor.

12. **Notices**. All notices, request, demands and other communications required or permitted to be given hereunder shall be sufficiently given if addressed to the addresses as set forth in the Agreement, posted in the U.S. Mail by certified or registered mail, return receipt requested or by overnight mail, including appropriate receipts. Any party may change said address by giving the other party hereto notice of such change of address. Notice given as hereinabove prescribed shall be deemed given on the date of its deposit in the U.S. Mail or with the overnight delivery service.

13. **Headings**. All section and subsection headings herein, wherever they appear, are for convenience only and shall not affect the construction of any terms herein.

*[Remainder of Page Left Intentionally Blank]*

**IN WITNESS WHEREOF**, the undersigned has caused this Note to be executed by its duly authorized officer and its seal affixed hereto, as of the day and year first above written.

**Bright Mountain Media, Inc.**

By: _____

W. Kip Speyer, Chief Executive Officer

**Acknowledged and agreed to:**

_____

Payee

5

**IN WITNESS WHEREOF**, the undersigned has caused this Note to be executed by its duly authorized officer and its seal affixed hereto, as of the day and year first above written.

**Bright Mountain Media, Inc.**

By: _____

W. Kip Speyer, Chief Executive Officer

**Acknowledged and agreed to:**

_____

Eli Desatnik

[*Signature Page – Note – August 2019*]

# COMPOSITE EXHIBIT "D"



Reply to:
MARKO F. CERENKO, ESQ.
TELEPHONE: 305-379-9000
mcerenko@klugerkaplan.com

December 3, 2021

**VIA E-Mail**
Bright Mountain Media, Inc.
Attn: Mr. Edward Cabanas, Mr. Kip Speyer,
and Mr. Todd Speyer
6400 Congress Avenue, Suite 2050
Boca Raton, FL 33487
Email: edward@bmaq.com
      kip@bmaq.com
      todd@bmaq.com

      **RE:**    **Bright Mountain Media, Inc. Promissory Notes dated August 15, 2019, in favor of Mr. Joey Winshman**

Dear Messrs. Cabanas, K. Speyer, and T. Speyer:

    The undersigned law firm represents Mr. Joey Winshman ("**Mr. Winshman**" or "**Holder**"). Please direct all future communications relating to Holder to Marko Cerenko.

    This correspondence shall serve as formal notice of an "Event of Default" by Bright Mountain Media, Inc. ("**Maker**") and demand for immediate payment of the August 15, 2019, Promissory Note between Maker and Holder (the "**Note**"). The Note matured and was due no later than August 15, 2020. To date, the principal sum of $270,937.50 (the "**Principal**") plus interest is past due and remains outstanding. Unless payment is received within seven (7) days of your receipt of this letter, Holder shall institute proceedings to collect the Note, with all past due interest, legal fees, and costs. Please contact me to make the appropriate arrangements for payment of Maker's obligations without further delay.

    Nothing set forth herein or set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of Holder's rights, remedies and/or privileges at law or in equity, all of which are specifically preserved.

        Respectfully,

        **KLUGER, KAPLAN, SILVERMAN,
        KATZEN & LEVINE, P.L.**

By: s/ *Marko Cerenko*
Marko Cerenko, Esq.

CC:     Mr. Joey Winshman



Reply to:
MARKO F. CERENKO, ESQ.
TELEPHONE: 305-379-9000
mcerenko@klugerkaplan.com

December 3, 2021

**VIA FedEx and E-Mail**
Bright Mountain Media, Inc.
Attn: Mr. Edward Cabanas, Mr. Kip Speyer,
and Mr. Todd Speyer
6400 Congress Avenue, Suite 2050
Boca Raton, FL 33487
Email: edward@bmaq.com
kip@bmaq.com
todd@bmaq.com

RE:   **Bright Mountain Media, Inc. Promissory Notes dated August 15, 2019, in favor of Mr. Nadav Slutzky**

Dear Messrs. Cabanas, K. Speyer, and T. Speyer:

The undersigned law firm represents Mr. Nadav Slutzky ("**Mr. Slutzky**" or "**Holder**"). Please direct all future communications relating to Holder to Marko Cerenko.

This correspondence shall serve as formal notice of an "Event of Default" by Bright Mountain Media, Inc. ("**Maker**") and demand for immediate payment of the August 15, 2019, Promissory Note between Maker and Holder (the "**Note**"). The Note matured and was due no later than August 15, 2020. To date, the principal sum of $293,437.50 (the "**Principal**") plus interest is past due and remains outstanding. Unless payment is received within seven (7) days of your receipt of this letter, Holder shall institute proceedings to collect the Note, with all past due interest, legal fees, and costs. Please contact me to make the appropriate arrangements for payment of Maker's obligations without further delay.

Nothing set forth herein or set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of Holder's rights, remedies and/or privileges at law or in equity, all of which are specifically preserved.

Respectfully,

**KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.**

By: s/ *Marko Cerenko*
Marko Cerenko, Esq.

CC:    Mr. Nadav Slutzky



Reply to:
MARKO F. CERENKO, ESQ.
TELEPHONE: 305-379-9000
mcerenko@klugerkaplan.com

December 3, 2021

**VIA E-Mail**
Bright Mountain Media, Inc.
Attn: Mr. Edward Cabanas, Mr. Kip Speyer,
and Mr. Todd Speyer
6400 Congress Avenue, Suite 2050
Boca Raton, FL 33487
Email: edward@bmaq.com
        kip@bmaq.com
        todd@bmaq.com

> **RE:    Bright Mountain Media, Inc. Promissory Notes dated August 15, 2019, in favor of Mr. Eli Desatnik**

Dear Messrs. Cabanas, K. Speyer, and T. Speyer:

The undersigned law firm represents Mr. Eli Desatnik ("**Mr. Desatnik**" or "**Holder**"). Please direct all future communications relating to Holder to Marko Cerenko.

This correspondence shall serve as formal notice of an "Event of Default" by Bright Mountain Media, Inc. ("**Maker**") and demand for immediate payment of the August 15, 2019, Promissory Note between Maker and Holder (the "**Note**"). The Note matured and was due no later than August 15, 2020. To date, the principal sum of $185,625.00 (the "**Principal**") plus interest is past due and remains outstanding. Unless payment is received within seven (7) days of your receipt of this letter, Holder shall institute proceedings to collect the Note, with all past due interest, legal fees, and costs. Please contact me to make the appropriate arrangements for payment of Maker's obligations without further delay.

Nothing set forth herein or set forth herein is intended, nor shall it be deemed, to modify, limit, release, reduce or waive any of Holder's rights, remedies and/or privileges at law or in equity, all of which are specifically preserved.

Respectfully,

**KLUGER, KAPLAN, SILVERMAN,
KATZEN & LEVINE, P.L.**

By: s/ *Marko Cerenko*        
Marko Cerenko, Esq.

CC:    Mr. Eli Desatnik